UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | Case No.: 1:17 CR 243 |
| --- | --- | --- |
| Plaintiff | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| DEMON CARTER, | ) | |
| Defendant | ) | ORDER |

Currently pending before the court in the above-captioned case is Defendant Demon Carter's ("Carter") Motion for Judgment of Acquittal, pursuant to Federal Rule of Procedure 29, and for a New Trial, pursuant to Rule 33. (ECF No. 85.) For the reasons set forth below, Carter's Motion for Judgment of Acquittal is denied. Carter's Motion for a New Trial is also denied.

**I. BACKGROUND**

On June 28, 2017, Carter and co-Defendant William Holmes ("Holmes") were both charged in a six-count Indictment, regarding two robberies of the Dollar Stores at 12900 Miles Road, Cleveland, Ohio, on May 14, 2016, and June 4, 2016. (Indictment, ECF No. 8.) As they relate to Carter, Count One charged both Carter and Holmes with conspiracy to commit robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). Counts Two and Three also charged both Carter and Holmes with aiding and abetting the same two robberies, in violation of 18 U.S.C. §§ 2 and 1951(a). The remaining Counts related only to Holmes.

A more thorough recitation of the evidence produced at trial to support Carter's conviction is discussed below in the court's consideration of Carter's Motions. However, the basic facts

regarding the two robberies as they relate to Carter are outlined below. At the time of both of the robberies, Carter was an employee of the Dollar Store, and Carter and Holmes were close friends.

On May 14, 2016, while working a closing shift with his manager, Almatrice Scriven ("Scriven"), Scriven asked Carter to go outside to close the shutters on the windows to the store. Although this duty usually belonged to the manager, it was raining, and Scriven indicated that she did not want to get her hair wet. While Carter was outside beginning to close the shutters, a man quickly approached and forced his way into the front door, which Scriven had been holding open while waiting for Carter to close the shutters. The man forced Scriven, at gun point, to take him to the back office, open the store safe, and put all the money into a bag. The robber then proceeded to exit the store. Scriven locked the front door and called 911. Shortly thereafter, Carter arrived back at the store. He told Scriven and the 911 dispatcher that a second robber had chased him around the block. The police arrived and interviewed both employees regarding what had occurred. Video surveillance was recovered from the store.

On June 4, 2016, another robbery occurred, this time while Dollar Store employees Jada Perkins ("Perkins") and Eboni Ervin ("Ervin") were working the closing shift. At the time of the robbery, Carter was also present at the Dollar Store—he had been asked by Perkins and Ervin a short time earlier to give them a ride home after work. While Carter was waiting in a car parked right outside the front door of the store, Perkins and Ervin began store closing procedures. Carter called Perkins and Ervin multiple times, rushing them to close the store. When the time came for them to close the shutters, a robber, again, quickly approached, grabbed Ervin and instructed both women, at gun point, to take him to the back room of the store and give him the money from the safe. While this was occurring, Carter had pulled away from the store in his car. The police were called, and

video surveillance was, again, recovered from the store. The resulting police investigation uncovered certain phone records, among other evidence, which they believed implicated Carter in both of the robberies, along with Holmes.

A jury trial as to both Carter and Holmes began on May 30, 2018. After the close of the Government's case, the court dismissed Count One, for conspiracy to commit robbery, as to both Carter and Holmes, pursuant to Rule 29. (*See* Trial Tr. 1192, ECF No. 82.) On May 9, 2018, following the six-day jury trial, Carter was convicted on both of the remaining counts that related to him, Counts Two and Three, for aiding and abetting robbery. (*See* Jury Verdict, ECF No. 68.) Carter is currently on bond, pending sentencing on August 21, 2018, at 10:00 a.m. (*See* Aug. 10, 2018 Non-Doc. Order.)

On July 19, 2018, Carter filed a Motion for Judgment of Acquittal under Rule 29, arguing that, even viewed in the light most favorable to the Government, the evidence presented at trial was insufficient to support the elements of the crime of aiding and abetting charged in Counts Two and Three. (ECF No. 85.) Alternatively, Carter moved for a New Trial under Rule 33, arguing that such relief is warranted in the interest of justice because the evidence preponderates heavily against the verdict. (*Id.*)

## II. LAW AND ANALYSIS

### A. Motion for Judgment of Acquittal

When reviewing the sufficiency of the evidence to support a conviction under Rule 29, the court must assess "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Samuels*, 308 F.3d 662, 666 (6th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S.

307, 319 (1979)). The court "do[es] not weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *See U.S. v. Abdullah*, 162 F.3d 897, 902–03 (6th Cir. 1998) (citing *U.S. v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). Circumstantial evidence alone may be sufficient to sustain a conviction. *See U.S. v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984). In considering the evidence, the "[p]ieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to other evidence in the case." *See Davis v. Lafler*, 658 F.3d 525 (6th Cir. 2001) (en banc). Moreover, it is well-settled in this Circuit that the "evidence need not remove every reasonable hypothesis except that of guilty." *See, e.g.*, *U.S. v. Hintz*, 267 F. App'x 407, 411 (6th Cir. 2008) (quoting *U.S. v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007)); *Stone*, 748 F.2d at 362. Thus, circumstantial evidence, "in its totality," may be sufficient to find a defendant guilty beyond a reasonable doubt, even where reasonable inferences which could be drawn from the evidence are consistent with innocence. *See U.S. v. Welch*, 97 F.3d 142, 150–51 (6th Cir. 1996); *Stone*, 748 F.2d at 362. However, evidence which merely leads to "reasonable speculation" of guilt will not be sufficient. *See Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 2010) (affirming the district court's conclusion that the evidence presented at trial was "too meager" to support conviction, because it only amounted to "reasonable speculation").

Carter does not dispute that a Hobb's Act robbery occurred on May 14, 2016, and June 4, 2016, at the Miles Road Dollar Store, nor does he assert that Holmes was not involved in the robberies. (*See* Rule 29 Mot. 3.) Rather, Carter argues that the evidence presented by the Government at trial was insufficient to prove beyond a reasonable doubt that, aided by knowledge Carter had acquired through his employment at the Dollar Store, Holmes and Carter "worked together" to carry out the robberies, in order to support Carter's conviction for aiding and abetting

4

in Counts Two and Three. (*See id*.)

To be found guilty of aiding and abetting a Hobbs Act robbery, it is necessary that the defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, and that he seek by his action to make it succeed. *See U.S. v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002) (quoting *U.S. v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995)) (internal quotations omitted). Thus, "aiding and abetting involves[:] (1) an act by defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission." *See id.* The mere presence of a defendant at the scene of a crime, even with knowledge that a crime is about to be, or is being committed, is insufficient to constitute aiding and abetting. *See U.S. v. Bryant*, 461 F.2d 912, 920 (6th Cir. 1972). Rather, it must be shown that the defendant in some way "offered assistance or encouragement to his principal in the commission of a substantive offense." *See Davis*, 306 F.3d at 409 (quoting *U.S. v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000)) (internal quotations omitted). Moreover, conviction for aiding and abetting a robbery requires more than a bare suspicion that the defendant participated in the crime. *See Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 2010) (affirming the district court's granting of the petition for habeas corpus where the evidence that the petitioner had served as a "lookout" during an arson because he was seen moving his head back and forth only amounted to "reasonable speculation" of his involvement that was insufficient to establish guilty beyond a reasonable doubt).

First, Carter argues that the Government cannot rely on the fact that he was present at each of the robberies because presence alone, even with knowledge that a crime is being, or is about to be committed, is insufficient to constitute aiding and abetting. (Rule 29 Mot. 19.) Particularly, with respect to the May 14, 2016 robbery, Carter argues that there was nothing inculpatory about Carter's

5

presence at the Dollar Store because it was during his closing shift. Moreover, with respect to the June 4, 2016 robbery, it was undisputed that he only came to the Dollar Store after being asked for a ride by two of his friends and co-workers, Perkins and Ervin, who were working the closing shift that night.

Second, Carter argues that there was no evidence to support the Government's theory that the robberies were an "inside job." (*See* Rule 29 Mot. 22.) Carter contends that there was no "insider" information to pass along, because the store closing times were clearly posted on the store doors. (*See* Gov't Ex. 105.) In addition, Government witness Detective Ian Mussell ("Mussell") testified that there were at least twenty reported robberies at similar stores in the same district in the first six months of 2016. (*See* Trial Tr. 792, ECF No. 77.) Detective Mussell also reasoned that these stores were particularly vulnerable to robbery because they have no security guards, typically only have two employees staffed at closing, and many of those employees are female. (*See id.* at 792–93.) Carter also argues that the Government cannot rely on the phone calls made between himself and Holmes around the time of the robberies as evidence that Carter was feeding information to Holmes, because there was no evidence of the content of those calls. (*See* Rule 29 Mot. 20–21.) Moreover, with respect to the May 14, 2016 robbery, unlike in the June 6, 2016 robbery, there was no series of calls between Holmes and Carter leading up to the crime, nor were there any calls made between them afterwards. Further, Carter's co-worker testified that Carter was not on his phone while they were closing the store on May 14, 2016, and, thus, he could not have been aiding Holmes in completing the robbery. (*See id*. at 21.) With respect to the June 4, 2016 robbery, Carter argues that the phone records actually demonstrate his innocence, particularly because one of the calls between himself and Holmes occurs during the exact time of the robbery. (*See* Rule 29 Mot. 20–21; *see also*

6

Rule 33 Mot. 33–34, ECF No. 85.)

Third, Carter argues that his various statements to law enforcement did not provide sufficient evidence that he aided and abetted the robberies. (*See* Rule 29 Mot. 23–25.) Particularly, Carter argues that, as a victim of the May 14, 2016 robbery, he assisted his co-worker, Almatrice Scriven, in completing her 911 call, reported that he had been chased around the block by a second robber, and waited at the store for police to arrive before sitting with multiple officers and answering their questions about what had occurred. (*See* Rule 29 Mot. 23.) There are all voluntary acts which point toward innocence. (*See id.*) Carter also argues that, even if, as the Government contends, his story "doesn't add up" and he failed to provide complete information to police, he was not charged with obstruction of justice, and failure to provide a consistent or accurate description of the robbery does not equate to evidence of aiding and abetting. Similarly, Carter argues that the Government's dissatisfaction with his statements and descriptions following the June 4, 2016 robbery do not infer guilt of aiding and abetting.

Finally, Carter argues that the court's finding, at the close of the Government's case-in-chief, that there was insufficient evidence to support conviction on Count One, for conspiracy to commit robbery, and granting Carter's oral Rule 29 motion on that basis, requires that the court similarly find that the evidence is insufficient to support conviction on Counts Two and Three for aiding and abetting. (*See* Rule 29 Mot. 25–28.)

After careful review of the evidence presented at trial in the light most favorable to the Government, the court finds that, although a close question, the evidence was sufficient for a reasonable jury to find Carter guilty of aiding and abetting the robberies beyond a reasonable doubt. At trial, with respect to both robberies, the Government relied heavily on the fact that: (1) Carter

7

worked at the Dollar Store prior to and during the time of both robberies, and, thus, was in a position to know insider information regarding store closing procedures—including where the store safe is located and how much time the manager has to set the alarm and leave the building before security and the police are notified—and to pass that information along to Holmes; and (2) that Holmes and Carter were very close friends, even describing themselves at various times as "brothers." (*See, e.g.*, Trial Tr. 495–96, ECF No. 76; Trial Tr. 1213, ECF No. 82; *see also* Opp'n Rule 29 Mot. 14.) Although, of course, mere association with a person engaged in criminal activity alone is insufficient to support a conviction for aiding and abetting, it was up to the jury to consider Carter and Holmes' personal association in light of all the other circumstantial evidence presented, and arrive at its verdict.

With respect to the May 14, 2016 robbery, the following evidence was introduced. First, phone records indicated that there were seven, and potentially fourteen, calls made between Carter and Holmes on the day of the robbery (*see* Trial Tr. 887–90, ECF No 79; Trial Tr. 1213–17, ECF No. 82; *see also* Gov't Exs. 814, 816, 817). Second, following the robbery, Carter gave incomplete or conflicting descriptions of the events of the robbery to law enforcement which raised questions regarding: (1) his flight path while being "chased" by a second robber (*see, e.g.*, Trial Tr. 604–05, 711–15, ECF No. 76; *see also* Trial Tr. 116–17, ECF No. 74); (2) his ability to run all the way around the block, and yet still make it back to the Dollar Store in time to see a vehicle in the parking lot that was caught on surveillance video in the parking lot less than a minute later (*see* Trial Tr. 609–10, 615–16, ECF No. 76); and (3) his inability to remember whether the robber who chased him had a gun, although he was able to give a detailed description of their shoes (*see* Trial Tr. 707–09, 715, 775 ECF No. 77). In addition, the surveillance video and the testimony of an

8

investigating officer called into question whether the robber actually "chased" Carter at all, or whether they just walked toward Carter and never left the vicinity of the store. (*See* Trial Tr. 605–06, ECF No. 76.) The officer also testified that Carter did not appear to be fatigued as someone would if they had just ran around the block. (*See* Trial Tr. 606–07, ECF No. 76). Finally, the Government pointed out the fact that Carter told police that he was away from the store "running" for the exact amount of time it took to complete the robbery.

With respect to the June 4, 2016 robbery, the Government relied on the following evidence: (1) there were nineteen phones calls made between Carter and Holmes during the day, and two of those calls occurred just prior to and during the robbery, respectively (*see* Gov't Ex. 824); (2) Perkins and Ervin testified that, after they asked Carter to drive them home after work, Carter called them multiple times while he was waiting in a car outside with another person for over an hour before the store was robbed, rushing them to close the store (*see* Trial Tr. 179–82, ECF No. 75; Trial Tr. 437–38, 446–50, ECF No. 76; *see also* Gov't Ex. 824); (3) Carter made calls in the following order after the robbery: Jada Perkins, the Dollar Store, Holmes, and then 911 (*see* Gov't Ex. 824); (4) when Carter eventually did call 911, he gave an incomplete description of the robbery to dispatch, and told dispatch that he had only seen the robbery "out of his peripheral vision" as he was driving by the store (*see* Trial Tr. 213–15, 335, ECF No. 75); (5) after Holmes was interviewed by Detective Mussell and Special Agent Howell regarding the robbery—during which they mentioned Carter—Holmes was recorded on multiple jail calls advising Carter to: "stay out the way," that they had his "brother's" name and the 309 number, and that he should be "low key" (*see* Trial Tr. 1041–45, ECF No. 78; *see also* Gov't Ex. 709); and (6) subsequently, during his interview with ATF Special Agent Howell on May 30, 2017, Carter denied that he called 911 and that he used a cell

9

phone with the number (216) 309-9248. (*See* Trial Tr. 1070, 1075, ECF No. 82.)

There was also the testimony of Dollar Store employees Perkins and Ervin, who were both working the night of June 4, 2016. Perkins and Ervin both testified that they felt like Carter had something to do with the robbery and that "it was a setup" because: (1) Holmes hesitated when he first approached them as if he believed, "dang, I am too late" (*see* Trial Tr. 184, ECF No. 75); (2) Holmes told Ervin that she had "two minutes," which she took to mean that he knew they only had two minutes to go into the store and reset the alarm (*see id.* at 184); and (3) as soon as the robbery was over, Carter kept calling Perkins and the Dollar Store landline asking what happened, and at some point he asked, "Y'all think I had something to do with it?" (*See* Trial Tr. 495, ECF No. 76.) Admittedly, they both also testified that they were mad at Carter for "pull[ing] off" right when the robber grabbed Perkins. (*See id.* at 495.) In addition, Perkins testified that, the next day, she received a call from Holmes, who tried to convince her that Carter had nothing to do with the robbery, though Perkins did not believe him and hung up the phone. (*See* Trial Tr. 493–95, ECF No. 76.) Later that day, Carter sent her a screenshot of his 911 call—apparently, also in order to convince her that he was not involved. (*See* Trial Tr. 210–11, ECF No. 75.)

Based on the totality of all the evidence, viewed in the light most favorable to the prosecution, it was not unreasonable for the jury to find beyond a reasonable doubt that Carter was guilty of aiding and abetting the two robberies. Carter certainly raises some reasonable hypotheses regarding his innocence, but the court cannot say that there was no basis from which the jury could have reasonably arrived at its verdict.

The Sixth Circuit's decision in *U.S. v. Parks*, 278 F. App'x 527 (6th Cir. 2008) is instructive. In that case, Parks similarly challenged his conviction for aiding and abetting a bank robbery

occurring in 2005 in his alleged role as the getaway driver. *See Parks*, 278 F. App'x at 529–30. The evidence as trial revealed that: (1) Parks had previously been pulled over and photographed in the alleged getaway car earlier in 2005; (2) eyewitnesses identified that same car as the getaway car in the robbery; (3) cell phone records demonstrated that Parks called the robber, Lige, at the time of the robbery and escape; (4) cell phone records also demonstrated that Parks called the owner of the car, Ruffin, at the time of the robbery and escape, and that five minutes after that call, Ruffin reported the car stolen; and (5) an eyewitness who followed Lige outside of the bank testified that Lige made a call on his cell phone at approximately the same time that cell phone records showed that Lige called Parks. *Id*. at 535–36. The getaway car was found burned the next day. *Id*. at 536. Parks argued that this evidence was insufficient to sustain his conviction because, other than calls made between him and Ruffin, there was no evidence connecting him to the robbery. *Id.* at 535. Moreover, there were no eyewitnesses placing Parks in the getaway car at the time of the robbery. *Id*. at 536. The Court disagreed, because, "although circumstantial, evidence that (1) [d]efendant possessed the car after Ruffin purchased it in 2005; (2) the cell phone records of Ruffin, Lige, and [d]efendant; (3) and the testimony of other witnesses, was sufficient to allow a reasonable trier of fact to convict [d]efendant, when viewed most favorably to the prosecution." *Id.*

The Court's decision in *U.S. v. Perales*, 534 F. App'x 502 (6th Cir. 2013), is also instructive. In that case, Perales challenged his conviction for aiding and abetting a women, Beasley, in the commission of the robbery of two banks, Charter One Bank and Apple Creek Bank. *See Perales*, 543 F. App'x at 504. Although it was admittedly a "close[] question" with respect to the second Apple Creek robbery, the Sixth Circuit ultimately upheld the defendant's conviction for both robberies. *Id.* at 505. While acknowledging that most of the evidence was circumstantial, the Court found that the

11

evidence was sufficient to support conviction for the Apple Creek robbery because: (1) the distance Beasley traveled after the robbery corroborated the government's claim that she had a driver assisting her; (2) Perales had been living with the woman before the robbery, and circumstantial evidence, including eyewitness identification of a man matching Perales's description, placed him at the hotel Beasley checked into after the robbery; (3) the fact that Perales served as the woman's getaway driver in two nearly-identical incidents indicated "a pattern whereby Beasley robbed the banks using a note, Perales drove the getaway car, and Beasley changed and discarded her clothes after the crime," and, thus, supported the conclusion that he served that same role in the later robbery; and (4) there was testimony that Perales had advised Beasley on how to commit the robberies a week prior, when he told a group of people, including Beasley, that, when robbing a bank, "just to pass a note on to the cashier and then…take to get [*sic*] the money and put in the bag and stuff. And you won't get much time as long as you don't show no weapons." *Id.* at 505–06. Because this "hypothetical advice" fit the exact circumstances of each of the robberies for which Perales was charged in connection with Beasley, the Court concluded that "it was not unreasonable for the jury to conclude that this statement encouraged Beasley to commit the robbery, and could thus serve as further proof that Perales had the requisite intent to aid in the commission of the robberies, including the Apple Creek robbery." *Id.* at 506. As a result, the Court found that there was sufficient evidence to sustain Perales's conviction. *Id.*

The circumstantial evidence adduced at trial in this case is admittedly more attenuated than that presented in both *Park* and *Perales*. For example, here there was no evidence to support, and, indeed, the Government did not attempt to argue, that Carter facilitated the robbery by acting as the getaway driver, or in some other concrete role. In addition, there was no evidence that Carter was

12

ever in possession of, or otherwise shared in, the proceeds of either of the robberies. Moreover, whereas in *Perales* there was direct testimony that he had advised Beasley on how to commit the robberies, there was no such testimony in this case. To the contrary, it was undisputed that the content of the relevant calls between Carter and Holmes were unknown. However, given the timing of those calls, the nature of Carter and Holmes's relationship, Holmes's advise to "stay away," Carter's conflicting statements and denials to law enforcement, and all of the other circumstantial evidence previously discussed, it would have been reasonable for the jury to infer—and, ostensibly, they did infer—that, whatever information Carter conveyed in those calls, aided Holmes in committing the robberies. Thus, although the Government's case here was not particularly strong, like the close questions presented in *Park* and *Perales*, the court similarly finds that the circumstantial evidence in this case, in its totality, was sufficient for a reasonable jury to conclude beyond a reasonable doubt that Carter aided and abetted the robberies.

The fact that the court found, at the close of the Government's case, that there was insufficient evidence to support the conspiracy charged in Count One does not change this conclusion. The crime of aiding and abetting is not subsumed in the crime of conspiracy. *See Nye & Nissen v. U.S.*, 336 U.S. 613, 620 (1949) (explaining that "[a]iding and abetting has a broader application. It makes a defendant a principal when he consciously shares in any criminal act whether or not there is a conspiracy.") Rather, they are two distinct crimes and, thus, it is possible to find evidence sufficient to support one crime but not the other. *See U.S. v. Townes*, 512 F.2d 1057, 1058 (6th Cir. 1975) (explaining that "[c]onspiring to commit a crime with another and aiding and abetting in its substantive commission are distinct crimes."). Here, the evidence offered in support of the conspiracy charge related mainly to records of calls made between Holmes and Carter prior to the

13

time of the robberies. The court determined that this evidence was insufficient to prove a criminal agreement because the evidence was "not just circumstantial, but…minimal." (*See* Trial Tr. 1193, ECF No. 82.) As a result, the court could not find that "a reasonable jury could conclude from this scant evidence beyond a reasonable doubt that there was this agreement beforehand between these Defendants and others to rob the store." (*See id.*) However, as discussed above, the evidence related to the Government's theory that Carter offered assistance during and after the two robberies, although not particularly strong, was more substantial.

The court notes that Carter raises reasonable questions regarding the sufficiency of some of the evidence in this case. Many of the inferences the Government drew from the evidence in order to support their theory could more aptly be described as amounting to "reasonable speculation," rather than evincing guilt beyond a reasonable doubt. Indeed, the court noted this in its ruling on Carter's oral Rule 29 motion during trial when it found that "there is…sufficient evidence there despite the evidence that it could be strongly argued to the contrary." (*See* Trial Tr. 1192, ECF No. 82.) But, the court is not required to negate all other reasonable hypotheses in order to find evidence sufficient to support a conviction. *See Hintz*, 267 F. App'x at 411 (explaining that the "evidence need not remove every reasonable hypothesis except that of guilty." (quoting *Hughes*, 505 F.3d at 592)). Rather, it is enough that, under the totality of the circumstantial evidence, a reasonable jury could have arrived at the conclusion that Carter's conduct made him more like a facilitator of the robberies, rather than merely a bystander with knowledge of the crimes—even if there is also evidence that supports Carter's innocent explanations for his conduct.

The court further notes that the bar for a defendant to succeed on a challenge to the sufficiency of the evidence to sustain his conviction presents a "nearly insurmountable hurdle,"

though it is not, in fact, unsurpassable. *See Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *U.S. v. Oros*, 578 F.3d 703, 710 (7th Cir. 3009)). But, here, Carter misses the mark, albeit narrowly. As a result, the court finds that the evidence was sufficient to convict Carter on Counts Two and Three, for aiding and abetting the robberies of the Dollar Store which occurred on May 14, 2016, and June 4, 2016. Accordingly, Carter's Motion for Judgment of Acquittal is denied.

### B. Motion for a New Trial

Under Rule 33, the court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Civ. P. 33(a). Unlike a Rule 29 motion, under this standard, the court is no longer required to view the evidence in the light most favorable to the prosecution, and it is permitted to weigh the evidence to ensure that there was no miscarriage of justice. *See U.S. v. Ashwoth*, 836 F.2d 260, 266 (6th Cir. 1988); *see also U.S. v. Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003) (explaining that, unlike motion for judgment of acquittal under Rule 29, the trial judge can consider the weight of the evidence and assess the credibility of the witnesses, sitting as a thirteenth juror). Nevertheless, motions for a new trial are disfavored, and there is a strong presumption in favor of the validity of a jury's verdict. *See U.S. v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007); *see also U.S. v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976) (noting that "motions for a new trial are not favored and granted only with great caution."). Thus, a jury's verdict should only be vacated if the defendant meets its burden by showing that "the verdict was against the manifest weight of the evidence." *See U.S. v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010).

As the court previously noted in its discussion of Carter's Motion for Judgment of Acquittal, and at the close of the Government's case-in-chief during trial, the Government's evidence against Carter in this case was not particularly strong. (*See* Trial Tr. 1191, ECF No. 82 (the court noting that

15

"the evidence is not…especially strong," and that "I am not suggesting at all it is strong.").) For example, many of the inferences drawn from the phone records were highly speculative because they could not place Carter in any particular location prior to or following the robberies, nor could they offer any insight into the substance of Carter's conversations with Holmes. Indeed, some of the calls lasted as short as four seconds. (*See* Gov't Ex. 824.)

In addition, there are many reasonable and innocent explanations for Carter's behavior with respect to his presence at the Dollar Store and his conflicting descriptions and statements about the robbery. (*See, e.g.*, Trial Tr. 1191–92, ECF No. 82 (the court noting that "there is a fair amount of information pointing in the other direction" and "[t]here is much to argue against him being an aider and abettor.").) For example, "in one robbery they asked him to pull down the shutter, and the other the store tenants asked him to give them a ride." (*See id.* at 1192.) It is true that Carter's 911 call provided a curiously incomplete description of the June 4, 2016 robbery, but this was explained by the fact that, in some communities, there is a general desire not to become too involved with police, and this was confirmed by the testimony of the dispatch officer who stated that it was not unusual for 911 callers to refuse to leave any identifying information, especially when reporting a crime. (*See* Trial Tr. 333–34, ECF No. 74.) Further, the fact that Carter drove away in his car as soon as the June 4, 2016 robbery began was reasonable in light of the danger posed and his explanation that he was "not about to be a Superman." (*See* Trial Tr. 729, ECF No. 77.) Similarly, Holmes warning Carter to "stay away" can be innocuously explained by the fact that, at that point, it was clear that law enforcement viewed Holmes as the prime suspect for the robberies, they were on the hunt to find his accomplices, Carter and Holmes were close friends, and Holmes did not want them to assume Carter's guilt by association. Finally, the testimony of Perkins and Ervin was somewhat dubious

16

given that they both demonstrated animus toward Carter because he had left them during the robbery.

However, in reviewing all of the same facts that the court considered in the prior Motion, although it is true that the court is no longer required to view the evidence in the light most favorable to the Government, and, instead, is permitted to weigh the evidence, the court cannot disregard the strong presumption in favor of the validity of a jury's verdict. Thus, while the evidence against Carter in this case was not especially formidable, the court does not find that the evidence pointing toward innocence is so strong that the verdict is against the manifest weight of the evidence. Consequently, although Carter's Motion for a New Trial presents an even closer question than that presented in his Motion for Judgment of Acquittal, the court must, again, find that the circumstances here do not warrant relief from the jury's verdict. Accordingly, Carter's Motion for a New Trial is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal (ECF No. 85) is denied. Defendant's Motion for a New Trial (ECF No. 85) is also denied.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

August 16, 2018